**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

FIVE STAR CARS LLC,

     *Plaintiff*,

     v.

GRAPHIC ARTS MUTUAL INSURANCE
COMPANY d/b/a UTICA NATIONAL
INSURANCE GROUP; and OCCIDENTAL
FIRE & CASUALTY COMPANY OF NORTH
CAROLINA d/b/a IAT INSURANCE GROUP,

     *Defendant*.

No. 3:22-CV-00915-MPS

---

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

This insurance coverage action arises from a fire that occurred at a car dealership owned by Plaintiff Five Star Cars LLC ("Five Star"). Five Star filed this lawsuit against its insurance providers, Defendants Graphic Arts Mutual Instance Co. ("GAMIC") and Occidental Fire & Casualty Insurance Co. of North Carolina ("Occidental"), bringing claims for breach of contract, breach of the covenant of good faith and fair dealing, "bad faith denial of an insurance claim," and violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA"). GAMIC and Occidental now move to dismiss Five Star's complaint under Rule 12(b)(6). For the reasons stated below, I grant GAMIC's motion to dismiss in its entirety, and I grant in part and deny in part Occidental's motion to dismiss.

## I.    BACKGROUND

### A.    Factual Background

The following facts are drawn from the operative complaint.[1]  ECF No. 58.  These facts are accepted as true for the purpose of this motion.

Five Star owns a used car dealership in Bristol, Connecticut.  *Id.* at ¶ 1.  On June 8, 2019, the dealership suffered a fire resulting in damage to personal property, business property, and leased real property.  *Id.* at ¶ 15.  Shortly thereafter, the Meriden Police Department notified Five Star that the fire was the result of an arson.  *Id*. at ¶ 17.

Prior to the fire, Five Star had purchased a commercial package policy from GAMIC and a commercial auto coverage policy from Occidental.  *Id.* at ¶ 2.  Immediately following the fire, Five Star reported the fire to GAMIC and Occidental.  *Id*. at ¶ 16.

Within a few weeks of the fire, the banks that had financed Five Star's vehicle inventory "started asking for payments and proceeded to block [its] account," and Five Star relayed that information to GAMIC and Occidental.  *Id*. at ¶ 18.  Five Star also sent GAMIC and Occidental information regarding its bills and operating expenses, requested "help to pay the bills," and "requested that Defendants relocate [its] business since the actual location was destroyed."  *Id.* at ¶¶ 18-19.

On July 19, 2019, the Department of Motor Vehicles suspended Five Star's dealer license for failing to pay its insurance premium.  *Id*. at ¶ 20.  Five Star "asked Defendants many times for relief without any progress."  *Id*.  Also, in July 2019, the Defendants failed to "approve[]" Five Star's relocation to a new address, and  Five Star's banks repossessed all of its financed

---

[1] As discussed below, the defendants contest that the second amended complaint is the operative complaint.  For the reasons described *infra* Section III.A, I will treat the second amended complaint as the operative complaint.

vehicles because its dealer license was no longer active and no payments had been made.  *Id.* at ¶ 22.

For several months following the fire, GAMIC and Occidental "kept delaying the process and asked for more documents," which were "extremely" difficult to provide because of the fire and required Five Star to "reproduce everything."  *Id*. at ¶ 23.  On August 15, 2019, "the Defendants" issued their first payment for private property damage in an amount of $28,653.28, which, according to Five Star, "was much less than the actual value of private property damage." *Id*. at ¶ 24.

On December 11, 2019, creditor Next Gear Capital commenced a lawsuit against Five Star.  *Id*. at ¶ 27.  On March 4, 2020, creditor Automotive Finance Corp. commenced a lawsuit against Five Star.  *Id.*  On July 1, 2020, loss payee Webster Bank commenced a lawsuit against Five Star.  *Id.*  On March 14, 2020, Five Star's landlord GRJH obtained a judgment against it for more than $138,000.00.  *Id.*  "All of this occurred notwithstanding the plain language of the policy which indemnifies [Five Star] from lawsuits arising from the loss."  *Id.*

By December 24, 2019, Five Star's remaining inventory was sold at auction by its creditors.  *Id.* at ¶ 26.  Five Star provided the defendants with receipts and information regarding its expenses.  *Id.*  Five Star alleges that it lost $220,572.66 in the liquidation.  *Id.*  "All of this could have been avoided but for Defendants['] conduct."  *Id.*

Five Star further alleges that on February 3, 2020, "Defendant" issued a check for loss of income amounting to $97,604, "alleging to cover eight months of pay losses."  *Id.* at ¶ 28.  On January 4, 2021, "Defendants" partially denied Five Star's claims and agreed to pay it an extra $17,732 for the balance of one year's lost income.  *Id.* at ¶ 30.  Five Star alleges that this payment should have been $48,802.  *Id.*  Five Star also alleges that "the Defendants" failed to

allow coverage under the "fire legal liability [policy]," basing their denial on the fact that they "attempted to provide" business income coverage.  *Id.*

**B.    Policy Provisions**[2]

**1. The GAMIC Policy**

GAMIC issued Five Star a commercial package policy effective from December 24, 2018 through December 24, 2019 (the "GAMIC Policy").  ECF No. 65-2 at 8.  The GAMIC Policy contained the following coverage parts: (1) a Commercial Property Coverage Part, (2) a Commercial Crime Coverage Part, and (3) a Commercial Inland Marine Coverage Part.  *Id.*  The Commercial Property Coverage Part covered, among other things, Five Star's building and personal property as well as lost income from business interruption.  *Id.* at 13 (Building and Personal Property Coverage Form), 27 (Business Income (And Extra Expenses) Coverage Form).  The building and personal property form stated that GAMIC "will pay for direct physical loss of or damage to Covered Property [as defined and limited by the policy] at the premises caused by or resulting from any Covered Cause of Loss."  *Id.* at 13.  The business income form provides that GAMIC "will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"  *Id.* at 53.  As is relevant here, the Commercial Property Conditions portion of the policy applied the following condition to the Commercial Property Coverage Part:

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

---

[2] Although Five Star references these policies in its complaint, it did not attach the policies to the complaint. GAMIC attached its policy to its motion to dismiss, *see* ECF No. 65-2, and Five Star attached the Occidental Policy to its brief in opposition to Occidental's motion to dismiss, *see* ECF No. 78 at 16–77.  As discussed further below, even where a document is not attached to the complaint, "the court may nevertheless consider [the document] where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

*Id.* at 36.

The Commercial Property Coverage Part also included a Fire Legal Liability Form, which provided Five Star with coverage in the event it was held legally responsible for damage to a third-party's property resulting from fire. *See* ECF No. 65-2 at 61. The Fire Legal Liability Coverage Form contains a condition stating, in pertinent part:

No person or organization has a right under this Coverage Form:

a. To join us as a party or otherwise bring us into a "suit" asking for damages form you; or

b. To sue us on this Coverage Form unless all of its terms have been complied with.

ECF No. 65-2 at 63.

The Commercial Crime Coverage Part of the GAMIC Policy covers losses arising from employee theft, forgery or alteration, theft, robbery, safe burglary, computer and funds transfer fraud, and counterfeit money. *See* ECF No. 65-2 at 91, 97, 114. The Commercial Crime part also contains a condition that states, in pertinent part:

You may not bring any legal action against us involving loss:

1. Unless you have complied with all the terms of this insurance;

2. Until 90 days after you have filed proof of loss with us; and

3. Unless brought within 3 years from the date you "discover" the loss.

ECF No. 65-2 at 112.

### 2. The Occidental Policy

Occidental issued Five Star a commercial policy effective from December 24, 2018 through December 24, 2019 (the "Occidental Policy").  ECF No. 78 at 18.  The Occidental Policy contains one coverage part, the Commercial Auto Coverage Part, which covers losses to Five Star's inventory of vehicles as well as its garage.  *See id.* (listing "Commercial Auto Coverage" as the policy's only coverage part).  As is relevant here, the Commercial Auto Coverage Part contains a Garage Coverage Form, which provides, in part, that Occidental "will pay for 'loss' to a covered 'auto' or its equipment . . .[c]aused by: (1) Fire, lightning or explosion; . . . [and] (5) Mischief or vandalism." *Id.* at 57.  The Garage Coverage Form also provides Five Star with third-party liability insurance regarding "garage operations."  *See id.* at 49–51 (noting Occidental's indemnity and defense obligations under the Garage Coverage Form).  The Garage Coverage Form is modified by a Fire Legal Liability Coverage endorsement, which "applies to 'property damage' caused by fire to premises while rented to you or temporarily occupied by you with the permission of the owner." *Id.* at 74.

### C.   Procedural Background

On June 8, 2022, Five Star's owner, Assaad Sakr, commenced this action in Connecticut Superior Court.  ECF No. 1 at 10.  Occidental removed the case to this Court on July 20, 2022. *Id.* at 1.  On January 19, 2023, an amended complaint was filed, replacing Sakr with Five Star as plaintiff.  ECF No. 48.  This complaint brought claims for breach of contract and violation of CUTPA and the CUIPA.  *Id.* at 7.

After Five Star's counsel withdrew from the case, I issued an order requiring Five Star either to retain counsel or to show cause  why the complaint should not be dismissed on the basis that a limited liability company may not appear *pro se*.  ECF No. 49.  That order also gave Sakr

the option of "fil[ing] an amended complaint naming himself as the sole plaintiff." *Id.*  In a subsequent order, I extended the deadline to show cause, explaining: "The plaintiff's response to the Court's show cause order (ECF No. 49)—whether it be an amended complaint or simply a response to the Order—is now due no later than **April 14, 2023**."  ECF No. 56 (emphasis in original).

On April 14, 2023, counsel appeared on behalf of Five Star and filed a second amended complaint.  ECF No. 58.  The second amended complaint brings the following claims against each of the defendants: breach of contract, breach of the covenant of good faith and fair dealing, bad faith denial of an insurance claim, and violation of the CUTPA and the CUIPA.  *Id.* at 6–21.  Defendants both filed motions to dismiss, Five Star opposed both, and the motions are ripe for decision.

## II.    LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating a motion to dismiss, the court must accept as true all of the complaint's factual allegations, *id.*, and "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

III.    DISCUSSION

A.    Status of Five Star's Second Amended Complaint

As an initial matter, both defendants object to Five Star's second amended complaint, asserting that it was filed without leave of Court. ECF No. 73-1 at 1–2 n.1; ECF No. 73-1 at 1–2 n.1. They specifically object to the addition of Five Star's second, third, sixth, and seventh causes of action, which allege breach of the covenant of good faith and fair dealing and bad faith insurance denial against GAMIC and Occidental, respectively. *Id.* Five Star argues that the Court granted it leave to file an amended complaint in its order at ECF No. 56, which extended Five Star's deadline to respond to the Court's show cause order "whether [the response] be an amended complaint or simply a response to the Order . . . ." *See* ECF No. 74 at 11; ECF No. 78 at 7. The defendants respond that the reference to an amendment in the Court's order at ECF No. 56 was expressly limited to one that reinserted Sakr as the sole plaintiff. ECF No. 73-1 at 1–2 n.1; ECF No. 73-1 at 1–2 n.1.

The Court's order at ECF No. 56 specifically related to the issue addressed in the Court's show cause order—*i.e.*, the inability of a limited liability company to appear *pro se*. The show cause order clearly stated that Sakr may "file an amended complaint *naming himself as the sole plaintiff*" to address Five Star's inability, as a legal entity, to represent itself. ECF No. 49 (emphasis added). Thus, the Court's order at ECF No. 56 did not grant Five Star leave to add claims to its complaint.

Nevertheless, I will retroactively grant Five Star leave to amend and treat the second amended complaint as the operative one. "In considering whether to grant a litigant leave to amend, the court considers such factors as undue delay, bad faith, dilatory motive, undue prejudice and futility of the amendment." *Darazs v. Dzurenda*, No. 3:14-CV-1330, 2015 WL

8

3886732, at *3 (D. Conn. June 24, 2015).  Here, there is no indication that Five Star amended its complaint in an effort to unduly delay the case or that the amendments were otherwise in bad faith.  Further, the case is still at an early stage, and neither GAMIC nor Occidental argues that it would experience any specific prejudice if I allowed the amendment.  Any prejudice to the defendants would in any event be minimal because they have addressed the allegations of the second amended complaint in their motions and because the additional claims would require little additional discovery, since the new claims for breach of the covenant of good faith and fair dealing and bad faith insurance denial are premised on the same contractual relationships as those in Five Star's original breach of contract claims.  Because there is no indication of improper motive, bad faith, or any significant prejudice, I allow the amendment and turn to the Defendants' attacks on the second amended complaint.

## B.     GAMIC's Motion to Dismiss

### 1.     Breach of Contract

GAMIC argues that Five Star's breach of contract claim is time-barred.  It points to the Commercial Property Conditions portion of the policy, which states, in part, that "[n]o one may bring a legal action against us under this Coverage Part unless . . . [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred."  ECF No. 65-2 at 36. According to GAMIC, because the fire that caused damage to Five Star's property occurred on June 8, 2019, *see* ECF No. 58 at ¶¶ 1, 15, Five Star was required to bring suit against GAMIC by June 8, 2021, *see* ECF No. 65-1 at 9.  But Five Star did not do so until over a year later, on June 17, 2022.  ECF No. 65-1 at 9; ECF No. 74 at 8.[3]

---

[3] Under Connecticut law, a lawsuit is commenced when the complaint is served.  *See Rana v. Ritacco* , 236 Conn. 330, 337 (1996) ("This court has long held that an action is brought once the writ, summons and complaint have been served upon a defendant."); *see also Rzayeva v. United States*, 492 F. Supp. 2d 60, 85 (D. Conn. 2007)

Five Star argues in response that the two-year suit limitation is ambiguous and should thus be construed against GAMIC.  In Connecticut, "[a]ny ambiguous words or phrases in an insurance policy are construed strictly against the insurance company and in favor of coverage. The test of coverage is not what the insurer intended to cover but what a reasonable person in the position of the insured would understand to be covered."  *Colony Ins. Co. v. Jack A. Halprin, Inc.*, No.3:10-CV-1059, 2012 WL 2859085, at *8 (D. Conn. July 11, 2012) (internal quotation marks and citations omitted).  "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading."  *Johnson v. Conn. Ins. Guar. Ass'n*, 302 Conn. 639, 643 (2011).  In construing an insurance policy, Connecticut courts "look at the policy as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result."  *Hansen v. Ohio Casualty Ins. Co.*, 239 Conn. 537, 545–46 (1996) (alteration omitted).

Five Star cites two provisions of the GAMIC Policy that, it argues, conflict with the two-year suit limitation and thus make the limitation ambiguous.  First, Five Star points to the Fire Legal Liability Coverage Form, which contains a provision stating, in pertinent part:

> No person or organization has a right under this Coverage Form:
>
> a.  To join us as a party or otherwise bring us into a "suit" asking for damages from you; or
>
> b.  To sue us on this Coverage Form unless all of its terms have been fully complied with.

---

("Where, as here, a federal court adjudicates state law claims, state statutes of limitations govern the timeliness of state law claims, and state law determines what events serve to commence an action . . . .  In Connecticut, an action is commenced not when the writ is returned but when it is served upon the defendant." (internal quotation marks and citations omitted)).

ECF No. 65-2 at 63.  Five Star argues that the absence of any time limitation in this provision

creates a discrepancy between this provision and the provision in the Commercial Property

Conditions containing the two-year suit limitation.

Second, Five Star points to the Commercial Crime Coverage portion of the policy, which

contains conditions that state, in pertinent part:

You may not bring any legal action against us involving loss:

1.  Unless you have complied with all the terms of this insurance;

2.  Until 90 days after you have filed proof of loss with us; and

3.  Unless brought within 3 years from the date you "discover" the loss.

*Id.* at 112.  According to Five Star, this three-year limitation similarly conflicts with the two-year

limitation in the Commercial Property Conditions.

Neither of the provisions Five Star points to renders the two-year suit limitation

ambiguous.  While contradictory provisions in an insurance policy may render a portion of a

policy ambiguous, *see Israel v. State Farm Mutual Automobile Ins. Co.*, 259 Conn. 503, 508

(Conn. 2002), no such contradiction exists here.  The provision of the Fire Legal Liability

Coverage Form on which Five Star relies is one of two sets of "LOSS CONDITIONS"

introduced by a sentence stating that "[t]he following conditions apply *in addition* to the

Commercial Property Conditions."  ECF No. 65-2 at 62 (emphasis added); *see id.* at 63.  Thus,

the two-year suit limitation, which is contained in the Commercial Property Conditions, *id.* at 36,

unambiguously applies to the Fire Legal Liability Coverage Form, and there was no need to

repeat it in that form.  Nor does any ambiguity arise from the three-year suit limitation in the

Commercial Crime Coverage Part, because that coverage part  is separate from the Commercial

Property Part of the GAMIC Policy, *see* ECF No. 65-2 at 8 (listing the GAMIC Policy's

coverage parts), and does not include arson—the only crime described in the complaint—among the crimes that may result in covered losses, ECF No. 65-2 at 91, 97, 114 (listing coverages for employee theft, forgery or alteration, theft, robbery, safe burglary, computer and funds transfer fraud, and counterfeit money).  As such, the Commercial Crime Coverage Part and its three-year suit limitation are inapplicable here and, in any event, do not make ambiguous the two-year suit limitation in the separate Commercial Property Part, which does apply to what Five Star describes as its "first-party commercial property claim for [its] business property and business interruption" against GAMIC.  ECF No. 74 at 1; *see* ECF No. 65-2 at 13–26 (Commercial Property Part coverage for building and personal property); *id.* at 27–35 (Commercial Property Part coverage for loss to business income due to business interruption).  Therefore, Five Star's claims against GAMIC are subject to the unambiguous two-year suit limitation policy in the Commercial Property Coverage Part.

In the alternative, Five Star argues that the two-year period was tolled by Governor Lamont's March 19, 2020 Executive Order 7G.  ECF No. 74 at 9.  That executive order "suspend[ed] for the duration of [the COVID-19] public health and civil preparedness emergency . . . all statutory . . . time requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings . . . ."  Exec. Order No. 7G, Protection of Public Health and Safety During COVID-19 Pandemic and Response, at 3–4 (Mar. 19, 2020) (available at: https://jud.ct.gov/HomePDFs/Executive-Order-No-7G.pdf).  By its express terms, Executive Order 7G applied only to *statutory* time requirements.  Contractual suit limitations provisions "do not operate as a statute of limitations" and "[a]s a result, such limitations provisions are governed by Connecticut contract law, not statutory law."  *Florimon v. Allstate Ins. Co.*, 616 F. Supp. 3d 180, 185–86 (D. Conn. 2022) (internal quotation marks,

citations, and alteration omitted); *see also Known Litig. Holdings, LLC v. Navigators Ins. Co.*, 934 F. Supp. 2d 409, 419 n.5 (D. Conn. 2013) ("[T]olling doctrines are inapplicable to contractual suit-limitation provisions unless the contract provides for tolling of the limitation period . . . ."). For this reason, courts have specifically held that Executive Order 7G did not toll suit-limitation provisions in private contracts. *See, e.g., 50 Waterville St. Tr., LLC v. Vermont Mut. Ins. Co.*, No. 3:21-CV-00368, 2023 WL 2240290, at *2 (D. Conn. Feb. 27, 2023) (holding that "[t]here is no indication that [Executive Order 7G] applied to ***contractual*** obligations" and that "a contractual limitations period for bringing suit is ***not*** a statute of limitations . . . but an enforceable condition of the contract itself." (emphasis in original)). Thus, Executive Order 7G did not toll the GAMIC Policy's two-year suit-limitation provision.

In sum, the two-year suit limitation provision applies to Five Star's claims against GAMIC. The provision is not ambiguous, nor was the two-year time period tolled by Executive Order 7G. Because the fire occurred on June 8, 2019, *see* ECF No. 58 at ¶¶ 1, 15, Five Star was required to bring suit against GAMIC on or before June 8, 2021. Five Star did not commence this suit until June 17, 2022, over a year after the contractual period ended. Thus, Five Star's breach of contract claim against GAMIC is time-barred, and I dismiss this claim.

### 2. Breach of Covenant of Good Faith and Fair Dealing and Bad Faith Denial of Insurance Claim

GAMIC argues that Five Star's claims for breach of the implied covenant of good faith and fair dealing and bad faith denial of an insurance claim are also time barred by the two-year suit limitation provision. According to GAMIC, "because the covenant of good faith and fair dealing is implied in every contract, and because bad faith claims arise out of the contract, they are *both* inextricably tied to the contract and thus are subject to, and barred by, the two-year suit limitation condition." ECF No. 75 at 7 (emphasis in

original).[4]  As noted, the two-year suit limitation requires that any lawsuit against

GAMIC "under this Coverage Part" be brought "within 2 years after the date on which

the direct physical loss or damage occurred."

Five Star's own allegations make clear that its claims for breach of the covenant of good

faith and fair dealing and bad faith denial of an insurance claim arise "under this [policy]."  Five

Star alleges that GAMIC "breached the implied covenant of good faith and fair dealing *arising*

*out of the policy* by, unreasonably and in bad faith[,] *denying Plaintiff's insurance coverage to*

*which it is entitled under its policy*."  ECF No. 58 at ¶ 38 (emphasis added).  And it alleges that

GAMIC committed "bad faith denial of [an] insurance claim" by "fail[ing] or refus[ing] to

perform [its] obligations *under the policy* . . . ."  *Id.*  at ¶ 43 (emphasis added).  These claims

plainly arise "under" the GAMIC policy and so, like the breach of contract claim, are time-

barred.  Other courts have concluded that claims for the breach of the covenant of good faith and

fair dealing and other tort claims arising in the context of an insurance policy are barred by time

limits set forth in the policy.  *See, e.g.*, *Florimon*, 616 F. Supp. 3d at 189 ("As with the breach of

contract claim, the claim of breach of the covenant of good faith and fair dealing is time-barred

under the contractual limitations provision of the Allstate Policy."); *Zieba v. Middlesex Mut.*

*Assurance Co.*, 549 F. Supp. 1318, 1323 (D. Conn. 1982) ("[I]t is obvious the alleged tortious

conduct of the insurer arises out of its obligations under the provisions of the policy.  Thus, an

insurer that violates its contractual duty to make payments to an insured is also vulnerable to the

imposition of additional damages for its tortious handling of the claim.  These are merely two

---

[4] GAMIC also argues that the two claims are duplicative of each other, and several Connecticut trial courts have so found.  *See Delmonaco v. Albert Kemperle, Inc.*, 2014 WL 7525518 *9 ("[S]everal Superior Court decisions have viewed claims for a breach of the covenant of good faith and fair dealing and bad faith claims arising from the same contract as fundamentally similar in character . . . [and] [a]t least one Superior Court decisions has found [the claims] . . . are indistinguishable." (internal citations omitted; citing cases)).  I assume, without deciding, that the claims are each distinct and cognizable.

different consequences which may flow from a violation of the same duty imposed upon the insurer by contract.  Therefore, the limitation period for suit as set forth in the policy controls.").

Five Star resists this conclusion by arguing that application of the suit-limitation provision to these "independent[]" claims, ECF No. 74 at 14, would violate the principle that a contractual provision exculpating a party from liability "'for harm caused intentionally or recklessly is unenforceable on grounds of public policy,'" quoting from *New London County Mutual Insurance v. Nissan North America, Inc.,* No. UWYCV024003594S, 2007 WL 1299185, at *7 (Conn. Super. Ct. Apr. 23, 2007) (quoting Restatement of Contracts (Second)) (second internal quotation marks omitted).  The quoted language, however, refers to the use of exculpatory clauses by *tortfeasors*, not insurers, because the public policy involved is the tort system's role in deterring tortfeasors from intentionally or recklessly causing harm.  *See id.* ("'An equally compelling function of the tort system is the prophylactic factor of preventing future harm.  The courts are concerned not only with compensation of the victim but with admonition of the wrongdoer.'" (quoting *Hanks v. Powder Ridge Restaurant Corp.*, 276 Conn. 314, 327 (2005)).  In any event, the two-year suit limitation is not an exculpatory clause, as it merely limits when a suit may be brought against the insurer.

Because Five Star's implied covenant and bad faith claims against GAMIC arise under the policy, they are barred by the two-year suit limitation provision.  I therefore dismiss these claims against GAMIC.

### 3.    CUTPA/CUIPA Claim

GAMIC argues that Five Star's CUTPA claim based on a violation of CUIPA should be dismissed for failure to state a claim.  Specifically, GAMIC argues that Five Star has not sufficiently pled that the conduct complained of occurred "with such frequency as to indicate a

general business practice," Conn. Gen. Stat. § 38a-816(6), as required to allege a CUIPA

violation.

"A plaintiff may assert a private cause of action based on a substantive violation of

CUIPA through CUTPA's enforcement provision." *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d

110, 117 (D. Conn. 2014).  To state a cognizable CUTPA claim for a CUIPA violation, the

plaintiff must allege both that the defendant engaged in an act proscribed by CUIPA and "that the

defendant has committed the alleged proscribed act with sufficient frequency to indicate a

general business practice."  *Id.*  Although it is clear that a plaintiff must allege "more than a

single act" or "isolated instances of insurance misconduct" to sustain a CUTPA/CUIPA claim,

*id.*; *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 849 (1994), "what constitutes a 'general business

practice' and the frequency with which the plaintiff needs to prove that the defendant has

unfairly resolved claims are far less clear," *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 166 (D.

Conn. 2014).  In deciding this issue, other courts have considered factors such as:

> [1] the degree of similarity between the alleged unfair practices in other instances
> and the practice allegedly harming the plaintiff; [2] the degree of similarity between
> the insurance policy held by the plaintiff and the policies held by other alleged
> victims of the defendant's practices; [3] the degree of similarity between claims
> made under the plaintiff's policy and those made by other alleged victims under
> their respective policies; [4] and the degree to which the defendant is related to
> other entities engaging in similar practices.

*Id.*

Here, Five Star's complaint points to two prior cases in which, it alleges, plaintiffs have

brought claims against GAMIC for similar coverage denials.  ECF No. 58 at 12 n.1.  A review of

these cases, however, belies Five Star's argument that GAMIC's allegedly unfair denial of

insurance coverage constitutes a general business practice.  One of the two cases Five Star cites

is too dissimilar from the case at bar to support a claim of a general business practice.  In *James*

*Gorman Insurance, Inc. v. Graphic Arts Mutual. Insurance Co.*, the District of Massachusetts granted summary judgment against GAMIC in a case alleging breach of the duty to defend the insured from claims brought against it.  No. CV 13-11263, 2015 WL 12781189 (D. Mass. Aug. 28, 2015).  But the claims in *James Gorman* were purely for breach of contract and included no allegations of unfair settlement practices.  So it is hard to see how that case could contribute to a finding that GAMIC engaged in unfair settlement practices at all, let alone that it did so "with such frequency as to indicate a general business practice."  Conn. Gen. Stat. 38a-816(6).  Moreover, *James Gorman* involved a different type of policy and different claims for coverage than are presented here.  The policy at issue in *James Gorman* was an "Errors and Omissions Liability policy," which covered "'loss' arising out of 'wrongful acts' committed in the course of [the insured's] rendering of professional services as a surety bond producer."  *Id.* at *1.  A claim seeking a defense under an insurance policy for the insured's alleged negligence in providing professional insurance broker services is far afield from the claim at issue here seeking losses under a commercial property policy for losses arising from an arson on the property.  Thus, aside from the fact that the two cases involve GAMIC's denial of insurance coverage, there are no similarities between *James Gorman* and this case.  *James Gorman* therefore cannot support Five Star's claim that GAMIC engaged in a general business practice of unfair settlement practices in violation of CUTPA/CUIPA.  *See Thomas v. Vigilant Ins. Co.*, 594 F. Supp. 3d 499, 513 (D. Conn. 2022) (dismissing CUTPA/CUIPA claim where the court found that the numerous prior cases cited by plaintiff "bear little similarity to the one at bar").  *Compare Moura v. Harleysville Preferred Ins. Co.*, No. 3:18-CV-422. 2019 U.S. Dist. LEXIS 180543, at *23 (D. Conn. Oct. 18, 2019) (denying motion to dismiss CUPTA/CUIPA claim where the plaintiffs supported their claim by citing "at least two (2) other instances involving other homeowners experiencing *the*

*same* damage caused by *the same* mechanism and involving policy language *identical* to that in the plaintiffs' policy" (emphasis added)).

The second case cited by Five Star is factually closer to this one but still involved no allegations, let alone a finding, of unfair settlement practices.  In *Breton, LLC v. Graphic Arts Mut. Ins. Co.*, an insured brought claims for breach of contract against GAMIC arguing that it was entitled to coverage under a commercial property insurance policy following a fire on its property.  No. 1:09-CV-00060, 2009 WL 3762302 (E.D. Va. Nov. 10, 2009).  The type of policy and the plaintiff's claims for coverage under the policy in *Breton* are similar to those here.  But like *James Gorman*, *Breton* involved no claims of unfair settlement practices.[5]

Even if one could discern an unfair settlement practice in *Breton*, it is far too remote in time to support Five Star's CUTPA/CUIPA claim.  The dispute in *Breton* stems from GAMIC's denial of an insurance claim in 2008—some eleven years before its alleged conduct in this case. *See Breton*, 2009 WL 3762302, at *4.  While Connecticut courts have not drawn bright lines in this area, it is safe to say that an eleven-year gap is too long to support a finding that GAMIC engaged in unfair settlement practices "with such frequency as to constitute a general business

---

[5] Moreover, the claim for breach of contract in *Breton* was not finally resolved against GAMIC.  While the Eastern District of Virginia initially granted summary judgment to the plaintiff on its breach of contract claim, *see id.* at *10, the Fourth Circuit reversed, finding that issues of material fact precluded summary judgment, *see Breton, LLC v. Graphic Arts Mut. Ins. Co.*, 446 F. App'x 598, 607 (4th Cir. 2011).  The parties subsequently settled, *see* Stipulation of Dismissal, *Breton, LLC v. Graphic Arts Mut. Ins. Co.*, No. 1:09-CV-00060 (E.D. Va. Jan. 6, 2012) (ECF No. 230), and so there was no final determination that GAMIC breached the insurance policy in *Breton*.  Some courts in this District have suggested that a failure to cite cases that were finally adjudicated against the insurer is fatal to a CUTPA/CUIPA claim. *See, e.g., Hawkeye, LLC v. Zurich Am. Ins. Co.*, No. 3:10-CV-899, 2011 WL 1216408, at *2 (D. Conn. Mar. 29, 2011) ("[N]owhere in [the plaintiff's] description of [lawsuits against the defendant insurer] does it explain the status of the cases and whether a finding that [the defendant] engaged in that practice was made, and there are no allegations with respect to the resolution of the cited cases.  Thus, there are no allegations that [the defendant] engaged in insurer misconduct in those cases.  The court, therefore, dismisses [plaintiff's CUTPA/CUIPA claims] for failure to state a claim of a 'general business practice.'"). *But see Clark v. Amica Mut. Ins. Co.*, No. 3:16-CV-1573, 2018 WL 2725441, at *8 (D. Conn. June 6, 2018) ("Plaintiff must only allege that Defendant's conduct occurs with sufficient frequency to constitute a 'general business practice, ' . . . .  That is a different question than whether the cases Plaintiff cites resulted in a finding that these business practices were unlawful.").

practice." Conn. Gen. Stat. 38a-816(6); *see Vermont Mut. Ins. Co. v. Natiello*, No. 3:17-CV-2050, 2020 WL 1472264, at *3 (D. Conn. Mar. 26, 2020) (explaining that the recency of other instances of alleged insurer misconduct is "an important consideration given [Conn. Gen. Stat. § 38a-816(6)]'s focus on 'frequency.'").  The fact that GAMIC was accused of breaching a similar insurance policy eleven years before it engaged in the actions described in the second amended complaint does not suggest that it has a "general business practice" of unfairly denying such claims.

Because it has failed to plausibly plead a general business practice, Five Star has failed to set forth a valid CUTPA/CUIPA claim against GAMIC.  So I dismiss this claim, and because there are no surviving claims against GAMIC, I dismiss GAMIC from this case.

### C.    Occidental's Motion to Dismiss

#### 1.    Breach of Contract

Occidental has moved to dismiss Five Star's breach of contract claim for failure to state a claim.  Occidental argues that Five Star "has not identified the Policy at issue, has not alleged which coverage parts are implicated by Plaintiff's claims, and has not identified any Policy provisions that were allegedly breached."  ECF No. 73-1 at 6.

It is true that Five Star's breach of contract claims are short on specifics.  Five Star does not distinguish between the Defendants in its allegations, bringing collective allegations against the "Defendant Insurance Companies."  *See, e.g.*, ECF No. 58 at ¶¶ 4, 6, 13.  And Five Star does not allege what specific provisions of each policy the Defendants have violated.  Some courts in this District have dismissed breach of contract claims on these bases.  *See, e.g.*, *Timmons v. City of Hartford*, 283 F. Supp. 2d 712, 718 (D. Conn. 2003) ("In asserting a breach of contract claim, the complaint must allege the provisions of the contract upon which the claim is based.").

Nonetheless, Five Star does enough—albeit just barely—to state a plausible breach of contract claim against Occidental.  As explained previously, Five Star did not attach the Occidental Policy to its complaint.  *See supra* note 2.  Rather, it attached the policy to its response to Occidental's motion to dismiss.  *See* ECF No. 78 at 16–77.  Nevertheless, courts may consider documents attached to, integral to, or incorporated by reference in the complaint. *See* Fed. R. Civ. P. 10(c).  Although Five Star only briefly referenced the Occidental Policy in its complaint, the policy is integral to the complaint.  *See Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks omitted)).  Therefore, I will consider it here.[6]  *See, e.g.*, *England v. Amica Mut. Ins. Co.*, 3:16-CV-1951, 2017 WL 3996394, at *2 n.3 (D. Conn. Sept. 11, 2017) (considering insurance policies not attached to the complaint on a motion to dismiss because they were integral to the complaint).

The Occidental Policy contains a Fire Legal Liability Coverage endorsement, which "applies to 'property damage 'caused by fire to premises while rented to you or temporarily occupied by you with the permission of the owner."  ECF No. 78 at 74.  This endorsement states that it modifies the Garage Coverage Form, *id.*, which provides Five Star with third-party liability insurance, *see id.* at 50–51 (noting Occidental's indemnity and defense obligations under

---

[6] Occidental argues that it would be "particularly prejudicial" for me to consider the Occidental Policy because "the Complaint—not the Opposition Brief—advises Occidental concerning the nature of Plaintiff's claims, influences the scope of discovery, and determines the nature of Occidental's litigation plan, including its coverage defenses."  ECF No. 79 at 2.  I disagree that considering the policy here would result in material prejudice.  As the issuer of the policy, Occidental had notice of its contents.  *See, e.g.*, *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-7483, 2018 WL 5045760, at *7 n.5 (E.D.N.Y. Oct. 17, 2018) (explaining that the defendant was "presumed to have had knowledge of [an] agreement's contents" because the defendant was a party to the agreement).  Further, the complaint contains enough detail to make clear that Five Star is suing Occidental under the policy for failure to indemnify it from third party claims stemming from the fire.  *See* ECF No. 58 para. 27.  Therefore, my consideration of the terms of the Occidental Policy has not unfairly prejudiced Occidental.

the Garage Coverage Form).  Thus, the Fire Legal Liability Coverage endorsement appears to provide Five Star with indemnity and defense protections in the case of fire damage on rented premises.  As Five Star alleges, "[o]n March 14, 2020 landlord GRJH obtained a judgment against Plaintiff for in excess of $138,000.00."  ECF No. 58 at ¶ 27.  Five Star alleges that Occidental did not indemnify it from this claim.  *Id.*  While Five Star provides no detail as to the nature of GRJH's claim against it—making it difficult to determine whether the claim would fall within the coverage of the Garage Coverage Form, as modified by the Fire Legal Liability Coverage endorsement—at this stage I must construe its allegations in the light most favorable to it.  *See Christine Asia Co. Ltd. v. Ma*, 718 Fed. Appx. 20, 23 (2d Cir. Dec. 5, 2017).  When I do so, I find that Five Star's allegations are enough to state a plausible breach of contract claim.  While it is true, as Occidental points out, that the Fire Legal Liability Coverage endorsement is applicable only in "excess over any collectible property insurance," ECF No. 78 at 74, and that Occidental did not specifically allege that any such collectible property insurance had been exhausted, at this stage, I must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  Thus, although it is a close call, Five Star has stated a plausible claim for relief on its breach of contract claim against Occidental, and I therefore deny Occidental's motion to dismiss this claim.

> **2.      Breach of Covenant of Good Faith and Fair Dealing and Bad Faith Denial of Insurance Claim**

Occidental also moves to dismiss Five Star's claims for breach of the covenant of good faith and fair dealing and bad faith denial of an insurance claim.  These counts contain nearly identical allegations.  For example, both counts allege that Occidental "[f]ail[ed] or refus[ed] to perform a fair, objective, and thorough investigation of the claim as required by the Connecticut

State Insurance Statutes (Title 38a)" and that Occidental "[a]sserted coverage defenses that were legally and/or factually invalid and thereby delay[ed] resolution of Plaintiff's claims."  ECF No. 58 at ¶¶ 77, 83.  Thus, I will apply the same standard to each claim.  *See, e.g.*, *Bilyard v. Am. Bankers Ins. Co. of Fla.*, No. 3:20CV1059, 2021 WL 4291173, at *4 n.2 (D. Conn. Sept. 21, 2021) ("Because the allegations in both [the implied covenant and bad faith] counts follow each other so closely, the Court applies the same standard to each claim for the purposes of a motion to dismiss.").

Under Connecticut law, to make out a claim of violation of the covenant of good faith and fair dealing or bad faith insurance denial (to the extent these are distinct claims at all, *see* note 4, supra), a plaintiff must plausibly plead that the insurer acted in bad faith.  *Id.* at *5.  ("A breach of the implied covenant of good faith and fair dealing necessarily includes bad faith conduct.").  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."  *Habetz v. Condon*, 224 Conn. 231, 237 (1992) (internal quotation marks omitted).

Here, Five Star has not done enough to state a plausible claim that Occidental's failure to provide the coverage Five Star sought reflected bad faith.  Five Star's only allegations of bad faith are conclusory.  For example, Five Star alleges that Occidental "misrepresent[ed] pertinent facts or insurance policy provisions relating to coverages at issue" and that Occidental's "conduct constituted an intentional misrepresentation, deceit, or concealment of a material fact known to Defendant."  ECF No. 58 at ¶¶ 77, 88.  But Five Star never identifies any misrepresentations made by Occidental or provides any facts suggesting why they are misrepresentations.  Five Star also alleges that Occidental "carried out [its] bad-faith conduct with a willful and conscious

disregard of Plaintiff's rights" and that Occidental "intended to . . . vex, damage, annoy, and injure Plaintiff." *Id.* at ¶¶ 78, 88.  But Five Star does not back up these conclusory assertions with any factual allegations.  Such "bald assertions" are not "sufficient to survive a motion to dismiss." *Nautilus Ins. Co.*, 2017 WL 9604616, at *3.  Similarly, Five Star alleges that Occidental "[a]sserted coverage defenses that were legally and/or factually invalid . . . thereby delaying resolution of Plaintiff's claims."  ECF No. 58 at ¶¶ 77, 83.  However, Five Star does not explain what these coverage defenses were or why they are invalid.  Simply put, Five Star has not alleged any facts that would allow me to infer that Occidental acted with an "interested or sinister motive," that it harbored a "design to mislead or deceive another," or that it engaged in "actual or constructive fraud."  All it has done is to sprinkle some conclusory assertions on top of a coverage dispute.  So I must dismiss the covenant of good faith and fair dealing and "bad faith" claims.

### 3.    CUTPA/CUIPA Claim

As with its CUTPA/CUIPA claim against GAMIC, Five Star cites two cases in support of its CUTPA/CUIPA claim against Occidental.  ECF No. 58 at 19 n.2.  In the first case, *Kingsley Management., Corp. v. Occidental Fire & Casualty Co. of North Carolina*, the plaintiffs, who were owners and operators of a mobile home development, brought claims for breach of the duties to defend and indemnify and breach of the implied covenant of good faith and fair dealing against Occidental.  441 F. Supp. 3d 1016, 1023 (S.D. Cal. 2020).  The plaintiffs faced a class-action and third-party suits regarding their alleged pollution of an area surrounding the mobile homes.  *Id.* at 1021–22.  The plaintiffs held a commercial liability policy covering bodily injury or property damage.  *Id.* at 1019–20.  Occidental denied coverage based on a provision excluding coverage for pollution.  *Id.* at 1020.  The Southern District of California denied Occidental's

motion to dismiss the duty to defend claim and did not substantively address the plaintiffs' other claims. *Id.* at 1025, 1028.

Five Star has not alleged enough facts for me to determine that *Kingsley* is sufficiently similar to this case to support its allegations of a general business practice. Occidental's denial of the duty to defend in *Kingsley* was based on its interpretation of the pollution exclusion in that policy. *Id.* at 1024–25. Five Star does not explain the basis of Occidental's coverage denial here, but there is no indication that Occidental's decision was based on a pollution exclusion—or any policy exclusion, for that matter. Moreover, as noted, the court's decision in *Kingsley* addressed only Occidental's duty to defend. *See id.* at 1028 (denying Occidental's motion to dismiss on all other counts because "the Court has denied the motion to dismiss with respect to the question of Occidental's duty to defend"). By contrast, it is unclear whether Occidental's defense obligations are implicated in this case. Five Star has not alleged that it requested Occidental to defend it in the actions pending against it; indeed, at no point does Five Star mention Occidental's defense obligations in its complaint. In addition, the plaintiff in *Kingsley* did not bring claims for unfair settlement practices, as Five Star does here, and the court did not suggest that Occidental had engaged in any such practices. Given the distinctions between these cases—and the lack of detail in Five Star's complaint—*Kingsley* cannot support Five Star's argument that Occidental's alleged conduct constitutes a general business practice.

The second case upon which Five Star relies is more relevant, but it is too old to help Five Star here. In *Conner v. Occidental Fire & Casualty Co. of North Carolina*, the plaintiff entered into a policy with Occidental that covered, among other items, a "1995 Jet Pup trailer," which the plaintiff used to haul grain between storage facilities. 281 Kan. 875, 877 (2006). After an incident in which the trailer sustained damage, Occidental denied coverage based on its

interpretation of the term "collision" and the application of a "wear-and-tear" exclusion. *Id.* at 881. The Kansas Supreme Court disagreed, holding that the claim was covered. *Id.* at 885.

  *Conner* shares some similarities with the case here. It appears that the policy in *Connor* is at least somewhat similar to the policy here, as each is a commercial liability policy that covers "covered 'autos,'" as defined in the respective policies. *Id.* at 879; ECF No. 78 at 49. And like Five Star, the plaintiff in *Conner* brought claims for breach of contract as well as bad faith and unfair settlement practices; further, the Kansas Supreme Court upheld the trial court's findings of bad faith and unfair settlement practices. *See Conner*, 281 Kan. at 876, 886, and 890-91. But the challenged actions of Occidental and its affiliate in that case took place in 2001 and 2002—some seventeen years before the Occidental's alleged conduct in this case. That is far too remote to suggest that Occidental engaged in any similar unfair settlement practices in this case "with such frequency as to indicate a general business practice." Conn. Gen. Stat. 38a-816(6). So I conclude that Five Star has failed to allege facts to state a plausible claim for a violation of CUIPA and thus failed to support its CUTPA claim based on a violation of CUIPA. Thus, I dismiss Five Star's CUTPA/CUIPA claim against Occidental.

## IV. CONCLUSION

  For the reasons stated above, I GRANT GAMIC's motion to dismiss in its entirety, and I GRANT in part and DENY in part Occidental's motion to dismiss. I grant Occidental's motion to dismiss in all respects except as to Five Star's breach of contract claim against it. Because there are no surviving claims against GAMIC, the Clerk is instructed to terminate GAMIC as a party.

              IT IS SO ORDERED.

_____
/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       January 8, 2024